EILEEN R. RIDLEY, CA BAR NO. 151735
  eridley@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET
SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE:  415.434.4484
FACSIMILE:   415.434.4507

JAMI A. GEKAS, (*Pro Hac Vice pending*)
  jgekas@foley.com
JOSHUA L. HARRIS (*Pro Hac Vice pending*)
  jlharris@foley.com
**FOLEY & LARDNER LLP**
321 NORTH CLARK STREET
SUITE 3000
CHICAGO , IL 60654-5313
TELEPHONE:  312.832.4500
FACSIMILE:   312.832.4700

Attorneys for Plaintiff CHEGG, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEGG, INC.,<br><br>   Plaintiff,<br><br>  v.<br><br>JOHN DOE, A/K/A "JAKE IRWIN", A/K/A "JASON AJ", A/K/A "GODWIN CHRISTO", D/B/A "TECHLACARTE", D/B/A "TECHFILX"<br><br>   Defendant. | Case No: 21-cv-2139<br><br>**PLAINTIFF CHEGG, INC.'S COMPLAINT FOR VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT, VIOLATIONS OF THE CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT, BREACH OF CONTRACT, AND TRADEMARK INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Chegg, Inc. ("**Chegg**") makes the following allegations against Defendant John Doe, a/k/a "Jake Irwin", a/k/a "Jason AJ", a/k/a "Godwin Christo", also d/b/a "TechLaCarte" and/or "Techfilx" ("**Defendant**"):

## PARTIES

1.      Plaintiff Chegg is a domestic corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 3990 Freedom Circle, Santa Clara, California 95054.

2.      The true identity of Defendant John Doe (hereinafter "**TechLaCarte**" or "**Techfilx**" or "**Defendant**") is unknown, but upon information and belief, is the individual or entity that owns or controls the domain names <techlacarte.com> and <techfilx.com>. On information and belief, that individual, who has alternatively used fictitious names including "Jake Irwin", "Jason AJ", and "Godwin Christo," also operates the websites associated with the aforementioned domain names, which are available at the URL https://techlacarte.com (the "**TechLaCarte Website**") and the URL https://techfilx.com (the "**Techfilx Website**"), and does business as both "TechLaCarte" and "Techfilx." Upon further information and belief, details to be obtained in discovery from third-party services providers such as PayPal, Cloudflare and BigRock Solutions, among others, will lead to the full identification of Defendant.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action alleges violations of federal statutes, including the Computer Fraud and Abuse Act (18 U.S.C. § 1030) and the Lanham Act (15 U.S.C. §§ 1114 and 1125(a)).  The Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

4.      This Court has personal jurisdiction because Defendant directs business activities toward and conducts business within this Judicial District through at least the interactive, commercial websites TechLaCarte and Techfilx.  Furthermore, among other acts, Defendant unlawfully accessed and used Chegg's computers and servers located in this District in order to operate and offer his illicit services.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims raised in this lawsuit occurred in this District.  Among other acts, Defendant unlawfully accessed and used Chegg's computers and servers in this District to operate and offer its illicit services.

6.      Jurisdiction and venue are also proper in this District under California Penal Code 502(j), which states: "For purposes of bringing a civil or criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, computer network in each jurisdiction."

## BACKGROUND

**A.    Introduction**

7.      Chegg is a leading direct-to-student connected learning platform, supporting students on their educational journey from high school to college and into their careers, with proprietary technology and tools to help students learn, grow, and excel.

8.      Billing itself as the "Smarter Way to Student®," Chegg makes its services available online, anytime and anywhere throughout the U.S., so that its users can access Chegg's resources whenever they are needed.  Chegg's learning platform has been designed to deliver a meaningful and personalized experience to each of Chegg's millions of student customers.  As a direct result of Chegg's quality products and services, high level of customer service, and its demonstrated commitment to improving the educational outcomes of all students, Chegg is very well known and highly regarded on college campuses throughout the country.

9.      With full knowledge of Chegg's reach, renown, and goodwill among students and of the popularity of Chegg's platform and services, Defendant has and is engaged in systematic, unauthorized dissemination of proprietary Chegg content that is available only to Chegg subscribers.  In addition, Defendant is actively soliciting monetary donations from the individuals to whom Defendant unlawfully disseminates Chegg's proprietary

1    content.  In other words, rather than develop its own products or services, Defendant is
2    making money by stealing from Chegg.

3         10.    Defendant's appropriation of Chegg's content for its own financial gain has
4    forced Chegg to bring this legal action against Defendant to stop the unauthorized
5    dissemination of its proprietary content and the diversion of its actual and potential
6    customers to Defendant's website.

7    **B.    Chegg and the Chegg Study® Homework Help Service**

8         11.    Chegg's online tools have all been developed to help students learn more
9    effectively and efficiently.  Through Chegg's proprietary online platforms, students can
10   access educational information, tools, and resources such as live online tutoring, writing
11   tools for proofreading essays and creating bibliographies to correctly cite their research
12   sources, interactive programs that explain math concepts, and online textbook rentals.
13   Chegg offers its services via its multiple websites, one of which can be accessed from the
14   URL http://www.chegg.com (the "**Chegg Website**" or "**Chegg.com**").

15        12.    Chegg is particularly well-known for its Chegg Study® service, which helps
16   students master challenging concepts on their own.  Through Chegg Study, users can access
17   Chegg's massive library of millions of proprietary step-by-step solutions to homework and
18   study questions.  For high-demand print textbooks and eTextbooks, primarily in the
19   subjects of sciences, technology, engineering, mathematics, statistics, business and
20   economics, Chegg offers "Textbook Solutions," which are step-by-step explanations that
21   help students understand how to solve the questions and master the subject matter from
22   their textbooks and course materials.  Users can also submit problems not covered in
23   textbooks to Chegg's subject matter experts, who provide proprietary step-by-step guided
24   solutions to those questions, known as "Expert Answers."  Both the "Textbook Solutions"
25   and the "Expert Answers" (collectively, "**Chegg Content**"), which have been created by
26   Chegg over many years and together comprise more than 30 million independent solutions,
27   are available exclusively to Chegg's subscribers.  A sample of Chegg Content can be
28   viewed below and in **Exhibit A** to this Complaint.

4834-2805-2960.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

≡                    Textbook Solutions    Expert Q&A    Study Pack    Practice

Impedance of the circuit, $Z = 22\,\Omega$
Power factor = 0.728
Frequency, $f = 50\,Hz$

Part B

Using the expression of power factor,

$$\cos\varphi = \frac{R}{Z}$$

Resistance of the circuit is given by

$$R = Z\,\cos\varphi$$
$$= 22 \times 0.728$$
$$= 39.87\,\Omega$$

Since the source voltage lags the current, it is a capacitance element. Capacitive reactance is given by,

$$X_c = \sqrt{Z^2 - R^2}$$
$$= \sqrt{88^2 - 39.87^2}$$
$$= 37.88\,\Omega$$

Power factor is unity means $\cos\varphi = 1$

$$\frac{R}{Z} = 1$$
$$R = Z$$

Impedance $Z = \sqrt{R^2 + (X_L - X_C)^2}$
$$X_L - X_C = 0$$
$$X_L = X_C$$

Inductive reactance, $X_L = L\omega$

Inductance, $L = \frac{X_L}{\omega}$
$$= \frac{X_L}{2\pi f}$$
$$= \frac{37.88}{2 \times 3.14 \times 50}$$
$$= 0.1206\,H$$

4

4834-2805-2960.2

13.     Chegg has invested an enormous amount of time and money, over many years, to develop, maintain, and expand its database of high-quality, user-friendly, proprietary educational resources.

14.     Chegg has paid many millions of dollars to license textbook questions from educational textbook publishers, allowing Chegg the right to use and reproduce questions from the publishers' copyrighted textbooks on Chegg.com.

15.     Further, Chegg has worked tirelessly with thousands of subject matter experts to create unique, original, and substantively rich teaching materials. Chegg's own research and feedback from customers has confirmed that students are not interested in just being told the final answers; they want to *learn*. For that reason, Chegg Study solutions are both independently created and "guided," meaning that they actually walk students through a step-by-step analysis of question and solution, to ***teach*** the user how to arrive at the correct solution.

16.     Chegg's substantial investment in its database of such solutions is ongoing – it adds new material to the Chegg Study service on a daily basis. Furthermore, Chegg employs stringent quality control measures to ensure that the Chegg Content is accurate, fulsome, and up-to-date. As a result, the Chegg Study service is not only beloved by students, but also has high profit margin and forms a core component of Chegg's business.

17.     To access the Chegg Study service, and other resources on Chegg.com, student users pay Chegg a monthly subscription fee. Each user then creates a unique username and password that allows him or her access to Chegg's services. These login credentials are personal to each user, and shared access is strictly prohibited under Chegg's Terms of Use. Chegg Study may be accessed from Chegg.com as well as Chegg's mobile application.

**C.     The Chegg Terms of Use Govern Access to Chegg.com and Chegg Study®**

18.     As a condition of access to Chegg's services, including Chegg.com and the Chegg Study service, users must agree to Chegg's Terms of Use (the "**Terms of Use**"). The Terms of Use are attached as **Exhibit B** to this Complaint.

19.    Chegg's Terms of Use include, without limitation, the following terms:

- **Account Registration & Termination**: ". . . you may not share your account or any of the Services with others. . . . You agree you will not sell or share or otherwise transfer your membership or any membership rights."

- **Proprietary Rights**: "Any unauthorized use of Chegg Content is prohibited."

- **Your License to Use Chegg Content**: "You may only use the Services for your own personal use.  You agree not to view, copy, or procure content or information from the Services by automated means . . . to frame, mask, extract data or other materials from the Chegg Content . . . .  No materials from the Services may be copied, reproduced, modified, republished, downloaded, uploaded, posted, transmitted, or distributed in any form or by any means without Chegg's prior written permission or as expressly provided in these Terms of Use. . . . Where you purchase a subscription or a license to access any Chegg Content, you may not share that subscription or license with others."

**D.    The CHEGG Marks**

20.    Since at least as early as 2003, Chegg, or its predecessor in interest, has exclusively used the coined and inherently distinctive mark CHEGG to brand Chegg's tutoring, homework help, textbook rental, and other related educational and entertainment services and products.  Chegg has acquired numerous U.S. federal trademark registrations, including, but not limited to, the following registrations (the "**CHEGG Marks**"):

- 5,058,869    CHEGG
- 4,777,915    CHEGG STUDY
- 4,021,925    CHEGG
- 3,970,742    CHEGG.COM
- 3,191,844    CHEGG

True and correct copies of the certificates of registration for these trademarks are attached as **Exhibit C**.  Three of these marks have become "incontestable" under Section 15 of the

1   Lanham Act, 15 U.S.C. § 1065, thereby constituting conclusive and independent evidence

2   of Chegg's exclusive right to use those marks in commerce.

3       21.    The registrations identified above cover goods and services including, *inter*

4   *alia*, "Educational services, namely, providing on-line learning resources in the nature of

5   study guides, study materials and personal study assistance for students of primary,

6   secondary and college levels," and "providing mentoring, tutoring, and instruction in a

7   wide variety of subjects . . . ."

8       22.    Chegg has invested a substantial amount of time and resources to promote and

9   advertise the inherently distinctive CHEGG Marks, and the goods and services associated

10  therewith.  Chegg markets its tutoring and other educational services to consumers

11  throughout the United States.  Since 2014, Chegg has spent more than $200 million to

12  advertise and promote its goods and services under the CHEGG Marks.  As a result, Chegg

13  has developed valuable goodwill and an outstanding reputation in the CHEGG Marks.  The

14  CHEGG Marks are extremely well-known among students in the United States and have

15  become exclusively associated in the minds of the consuming public with a single source,

16  namely, Chegg.

17  **E.**    **Defendant's Unauthorized Activities**

18      23.    Defendant is the individual who owns or controls the domain name

19  <techlacarte.com> and the TechLaCarte Website, and operates the TechLaCarte criminal

20  endeavor.

21      24.    The registrar of the <techlacarte.com> domain name is a US-based entity

22  called BigRock Solutions Ltd.  According to BigRock Solutions, the <techlacarte.com>

23  domain name is registered to one "Jake Irwin," with public address listed as "303, North

24  street" in "MAA, IN," postal code 600028.  A true and correct copy of the WHOIS look-

25  up for the domain name <techlacarte.com>, accessed on March 16, 2021, is attached as

26  **Exhibit D** to this Complaint.  On information and belief, the address provided for the

27  registrant in the WHOIS is incorrect (for example, "MAA" is the airport code for Chennai,

28  India, rather than a city).  The registrant's true location and identity are unknown.

25.     Upon information and belief, Defendant is also the individual who owns or controls the domain name <techfilx.com> and the Techfilx Website, and operates the Techfilx criminal endeavor.  BigRock Solutions is also the registrar of the <techfilx.com> domain name.   According to BigRock Solutions, the <techfilx.com> domain name is registered to one "Godwin Christo," with public address listed as "8/30, sri sakthi nagar, krishnapuram" in "Tamil Nadu, IN" postal code 627011.  A true and correct copy of the WHOIS look-up for the domain name <techfilx.com>, accessed on March 16, 2021, is attached as **Exhibit E** to this Complaint.  On information and belief, the address provided for the registrant in the WHOIS is incorrect, and the registrant's true location and identity are unknown.

26.    Since at least February 2020, TechLaCarte has published and maintained numerous blog posts that offer Internet users free access to the subscription-only content and services of a variety of digital content and service providers, including Chegg.

27.    For instance, TechLaCarte published and maintained two posts that enabled visitors to circumvent Chegg's paywall and access proprietary Chegg Study homework help solutions without a subscription, and thus, without authorization.  In particular, Defendant's posts, titled "Free Chegg Accounts Username and Password" ("**Chegg Accounts**") and "How to Get Chegg Answers for FREE" ("**Chegg Answers**") (collectively, "**2020 Infringing Posts**"), were first published on the TechLaCarte website at least as early as February 1, 2020, and March 21, 2020, respectively.  *See* **Exhibits F, G**.  Defendant republished the 2020 Infringing Posts to the TechLaCarte website, such that both, at that time, bore a date of April 4, 2020.  *See* **Exhibits H, I**.

28.    The 2020 Infringing Posts invited visitors to request unauthorized access to Chegg Content by submitting a specific Chegg question or a link to a specific Chegg question via a request form.  The 2020 Infringing Posts expressly instruct visitors on how to request Defendant's illicit services.

29.    The Chegg Accounts post states (*see* **Exhibit H**):

Our service is free to use – all you need to do is **post your**

8

**question or Chegg question link in our comments section with your email address** and let us find the answer for you. You will receive the complete solution to your question via email.

30.     The Chegg Answers post states (*see* **Exhibit I**):

We have an active Chegg subscription, so guys, if you have any questions in your subject, just ask it directly by filling the handy form found below or in the comments section or reach us through of facebook page. In Techlacarte we are happy to help you with your tough assignments. You will receive complete solutions to your question within a few minutes after the submission. In case of urgency with the answer don't hesitate to leave us a message on our facebook page, because it can help you get your answers real fast, especially if we are away. Make sure to add correct email address in the submission form, since we will be sending your answers to the email address you provided in the form entry.

31.     An image of the request form used in the 2020 Infringing Posts can be seen in the attached **Exhibits F-I** and is reproduced below:



4834-2805-2960.2

32.     After entering a name, email address, and a specific Chegg question or link to a Chegg question, the user clicks the "Submit" button.  Shortly after submitting a request using this form, the requesting user receives an email response that provides – free of charge – a verbatim copy of the relevant Chegg Content.  An example of such an email response containing a verbatim copy of certain Chegg Content is attached as **Exhibit J**, and images from **Exhibits A** and **J** are reproduced below to demonstrate that TechLaCarte provides a verbatim copy of the protected Chegg Content.

<u>Public Version of Chegg Study Solution (Ex. A)</u>



4834-2805-2960.2

<u>Subscription Only Version of Chegg Study Solution (Ex. A)</u>

≡                Textbook Solutions    Expert Q&A    Study Pack    Practice

Impedance of the circuit, $Z = 22\,\Omega$
Power factor $= 0.728$
Frequency, $f = 50\,Hz$

Part B

Using the expression of power factor,

$$\cos\varphi = \frac{R}{Z}$$

Resistance of the circuit is given by:

$$R = Z \cdot \cos\varphi$$
$$= 22 \cdot 0.728$$
$$= 39.87\,\Omega$$

Since the source voltage lags the current, it is a capacitance element. Capacitive reactance is given by,

$$X_c = \sqrt{Z^2 - R^2}$$
$$= \sqrt{484 - 39.87^2}$$
$$= 37.88\,\Omega$$

Power factor is unity means $\cos\varphi = 1$

$$\frac{R'}{Z'} = 1$$
$$R' = Z'$$

Impedance $Z' = \sqrt{R'^2 + (X_L - X_c)^2}$

$$X_L - X_c = 0$$
$$X_L = X_c$$

Inductive reactance, $X_L = L\omega$

Inductance, $L = \frac{X_L}{\omega}$
$$= \frac{X_L}{2\pi f}$$
$$= \frac{37.88}{2 \cdot 3.14 \cdot 50}$$
$$= 0.1206\,H$$

CHEGG, INC.'S COMPLAINT
CASE NO. 21-cv-2139

4834-2805-2960.2

<u>Verbatim Copy of Subscription Only Chegg Solution Provided by Defendant (Ex. J)</u>

33.     Through the above-described process, Defendant intentionally distributed Chegg Content without authorization to individuals who did not subscribe to Chegg's services so that they may access the proprietary Chegg Content without paying for those services.

34.     Upon information and belief, Defendant obtained the Chegg Content that it distributed using a paid Chegg subscription that it maintains and periodically renews.  For example, the April 4, 2020 version of the Chegg Accounts post states (*see* **Exhibit H**):

> However, you can't view the solutions if you don't have a paid Chegg account. If this is your case, we can help you view the answer! In Techlacarte we have a Chegg subscription, and we can use it to help you out. You can see our chegg subscription status in the attached screenshot. We have a **Chegg subscription valid upto April 2020**, which costs $14.95 per month. Well you don't have to worry about the bill, because we paid it for you and we are offering this service for completely free of cost. Take advantage of this great opportunity that exclusively available to all of the TechLaCarte fans and visitors.

35.     By contrast, the previous February 1 version of the Chegg Accounts post advertises use of a Chegg subscription valid through February 2020 (*see* **Exhibit F**):

> However, you can't view the solutions if you don't have a paid Chegg account. If this is your case, we can help you view the answer! In Techlacarte we have a Chegg subscription, and we can use it to help you out. You can see our chegg subscription status in the attached screenshot. We have a **Chegg subscription valid upto February 2020**, which costs $14.95 per month. Well you don't have to worry about the bill, because we paid it for you and we are offering this service for completely free of cost. Take advantage of this great opportunity that exclusively available to all of the TechLaCarte fans and visitors.

36.     Defendant is not, and never has been, authorized to copy, display, distribute, and/or provide any access whatsoever to the proprietary Chegg Study homework help materials, or any other Chegg Content.

37.     Defendant's actions are knowing, intentional, willful, malicious, and fraudulent.

38.    Upon information and belief and at least during much of 2020, Defendant monetized its criminal enterprise by offering subscriptions to users for access to and distribution of proprietary Chegg Content through such entities as PayPal.

39.    In 2020, Chegg implemented certain technical measures to prohibit Defendant's ongoing theft, and also took various enforcement actions against Defendant. Chegg was able, for a time, to shut down the TechLaCarte criminal endeavor.  For that reason, and due to the general difficulty with commencing litigation during the early months of the global Covid-19 pandemic in 2020, Chegg held off—temporarily – on filing suit against Defendant, but continued to monitor the TechLaCarte website.

40.    Chegg learned, unfortunately, that Defendant was not to be deterred.  On information and belief, after pausing his business for some period of time over the summer of 2020, Defendant recommenced his criminal endeavor with a new scheme to monetize his theft from Chegg, during the fall of 2020.

41.    Defendant's criminal conduct continues to this day, and will continue to damage Chegg if not stopped.  For instance, on February 7, 2021, Defendant republished a blog titled "How to Get Chegg Answers for Free" ("**2021 Infringing Post**"). Unsurprisingly, the 2021 Infringing Post lists TechLaCarte as the "recommended" method for users to access free Chegg answers without an authorized Chegg subscription. *See* **Exhibit K.**

42.    Chegg has been and continues to be damaged by Defendant's actions because consumers who would otherwise purchase a subscription from Chegg may use TechLaCarte to acquire Chegg Content for free.  This results in lost subscription revenue to Chegg, as well as the lost opportunity to cross-sell Chegg's complementary products and services through Chegg.com.

43.    Information to quantify the extent of the harm to Chegg is currently in the possession and control of Defendant.  Nonetheless, upon information and belief, Defendant has disseminated over 11,300 answers and other proprietary Chegg Content.  This is

evidenced by a banner displayed below the request form in the 2021 Infringing Post, which banner is shown in the attached **Exhibit K** and is reproduced below:

44.     Defendant's intentional and willful unauthorized conduct is further evidenced by his evolving revenue generation methods.  For example, while the Defendant initially used PayPal to collect payments from users, upon information and belief, Defendant now offers users a three-tiered "Chegg Unlock Plan" to users who request Defendant's illegal services, attached as **Exhibit L** and reproduced below:

4834-2805-2960.2

1
2
3
4
5

45.     Depending on the user's selection, the Defendant will "unblock" between 4 and 10 Chegg links for a certain amount of time.   Upon selection and submission, Defendant provides each user with a "Unique submission ID" to track the processing of a request.   For instance, users are able to see whether a request has been "Submitted," is "Queued," or is "Completed."   *See* **Exhibit M**, reproduced below:



46.     Once a request is "Completed", Defendant emails the user with specific instructions on next steps, including an invoice and directions to access and download the free answer.  *See* **Exhibit N.**

CHEGG, INC.'S COMPLAINT
CASE NO. 21-cv-2139

4834-2805-2960.2

47.   Chegg has been and continues to be further damaged because Defendant has been and is infringing upon the CHEGG Marks.  Defendant, without authorization, displays the CHEGG Marks both in the 2020 Infringing Posts, 2021 Infringing Post, and in its email response in a manner likely to confuse consumers as to its association, affiliation, endorsement or sponsorship with or by Chegg.  Such unauthorized and confusing use of these marks has caused and continues to cause irreparable damage to Chegg and the goodwill it enjoys in the CHEGG Marks.

48.   Similar to the TechLaCarte criminal conduct, and upon information and belief, Techfilx has also published and maintains numerous blog posts that offer Internet users free access to the subscription-only content and services of a variety of digital content and service providers, including Chegg.

49.   In particular, Techfilx has published and maintains posts that enable visitors to circumvent Chegg's paywall and access proprietary Chegg Study homework help solutions without a subscription, and thus, without authorization.  For instance, one

17

post entitled "How to Get Chegg Answers for Free 2020" ("**Chegg Blog**") was first published on the Techfilx website sometime in 2020 (republished on March 12, 2021) and provides a detailed account of how to "Unblur Free Chegg Answers for Free," along with a host of other means for users to "find answers for free from Chegg or sites related to that." The Chegg Blog is attached as **Exhibit O** and is reproduced in part below:

50. Like Defendant's illegal conduct through TechLaCarte, Chegg has been and continues to be further damaged because Defendant has been and is infringing upon the CHEGG Marks through Techfilx. Defendant, without authorization, displays the CHEGG Marks in the Chegg Blog in a manner likely to confuse consumers as to its association, affiliation, endorsement or sponsorship with or by Chegg. Such unauthorized and confusing use of these marks has caused and continues to cause irreparable damage to Chegg and the goodwill it enjoys in the CHEGG Marks.

51. While Chegg continues to monitor Defendant's criminal conduct and has implemented innovative technical solutions to thwart Defendant's actions, Chegg is, at this point, left with no option other than to commence suit. Without the intervention of this Court, Defendant will undoubtedly continue to look for new ways to steal Chegg's content and monetize his efforts, all to the great detriment of Chegg.

## COUNT ONE
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

52. Chegg realleges and incorporates by reference, as if fully set forth herein, the allegations in all of the preceding paragraphs.

53. Chegg's computers are involved in interstate and foreign commerce and communication, and are thus protected computers as defined under 18 U.S.C. § 1030(e)(2).

54. On information and belief, Defendant knowingly, and with intent to defraud Chegg, accessed Chegg's computers without authorization or in excess of authorization, at least because Defendant accesses Chegg's computers for the purpose and with the intent of obtaining and distributing Chegg Content to individuals who do not subscribe to Chegg's services, in violation of Chegg's Terms of Use.

55.     On information and belief, Defendant thereby obtained from Chegg's computers valuable information that Defendant distributed through the Infringing Posts, in violation of Chegg's Terms of Use.  The information includes Chegg's proprietary material in the form of solutions to homework questions and problems.

56.     On information and belief, Defendant knowingly, and with intent to defraud Chegg, used the valuable information obtained from Chegg's computers in order to obtain something of value.

57.     All of Defendant's unlawful and unauthorized access and conduct continues to this day.

58.     Defendant's conduct is for the purpose of private financial gain and has caused a loss to Chegg during a one-year period in excess of $5,000.  These losses will increase as time goes on.

59.     Chegg has been and continues to be damaged by Defendant's actions, including by being forced to expend resources to investigate the unauthorized access and abuse of its computer network, as well as by the loss of customers who would otherwise have subscribed to Chegg's platform and the loss of the continuing revenue streams associated with such lost customers.  Chegg seeks compensatory and other equitable relief under 18 U.S.C. § 1030(g) in an amount to be proven at trial.

60.     Chegg has suffered irreparable and incalculable harm and injuries resulting from Defendant's conduct, which harm will continue unless Defendant is enjoined from further unauthorized use of Chegg's protected computers.  Chegg has no adequate remedy at law.

## COUNT TWO
## CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT, CALIFORNIA PENAL CODE § 502

61.     Chegg realleges and incorporates by reference, as if fully set forth herein, the allegations in all of the preceding paragraphs.

62.    Defendant knowingly accessed and without permission used Chegg data, computers, computer systems and/or computer networks in order to execute a scheme to defraud and deceive, and in order to wrongfully obtain and control data, in violation of California Penal Code § 502(c)(1).

63.    Defendant knowingly accessed and without permission took, copied, and/or used data from Chegg's computers, computer systems and/or computer networks in violation of California Penal Code § 502(c)(2).

64.    Defendant knowingly and without permission used or caused to be used Chegg's computer services in violation of California Penal Code § 502(c)(3).

65.    Defendant knowingly and without permission provided or assisted in providing a means of accessing Chegg's computers, computer systems and/or computer networks to enable others to wrongfully obtain, take, copy, and/or use Chegg's data, in violation of California Penal Code § 502(c)(6).

66.    All of Defendant's unlawful conduct in violation of California Penal Code § 502 continues to this day.

67.    Chegg suffered and continues to suffer damage as a result of Defendant's violations of California Penal Code § 502 identified above.

68.    Chegg has suffered irreparable and incalculable harm and injuries resulting from Defendant's conduct, which harm will continue unless Defendant's conduct is enjoined.  Chegg has no adequate remedy at law.

69.    Defendant willfully violated California Penal Code § 502 with conscious disregard of Chegg's rights, and Defendant's actions as alleged above were carried out with fraud and malice.

70.    Pursuant to California Penal Code § 502(e), Chegg is entitled to injunctive relief, compensatory damages, punitive or exemplary damages, attorneys' fees, costs and other equitable relief.

1
2

**COUNT THREE**
**BREACH OF CONTRACT**

3   71.   Chegg realleges and incorporates by reference, as if fully set forth herein, the
4   allegations in all of the preceding paragraphs.

5   72.   Use of Chegg's platform and services is governed by and subject to Chegg's
6   Terms of Use.  All users of Chegg.com must agree to the Terms of Use as a condition of
7   their use of Chegg's services and content, regardless of whether they register with the site
8   or merely visit it as a guest.  The Terms of Use apply regardless of whether a user accesses
9   Chegg.com by computer, mobile device, or otherwise, and whether the access is direct or
10  through a third-party website or server.

11  73.   In order to access Chegg's proprietary solutions to homework questions and
12  problems, users must create an account and subscribe to Chegg's services.  During the
13  account creation process, users are expressly put on notice that their access to Chegg's
14  services is subject to Chegg's Terms of Use:



15
16
17
18
19

20  74.   Chegg's Terms of Use expressly prohibit users of Chegg.com from sharing
21  their account or any services and from copying and reproducing Chegg Content.

22  75.   Defendant has willfully and repeatedly breached the Terms of Use by
23  collecting, copying, and reproducing proprietary Chegg Content through the Infringing
24  Posts and thereby effectively sharing its accounts and Chegg's services with others.

25  76.   Chegg has suffered irreparable and incalculable harm and injuries resulting
26  from Defendant's conduct, which harm will continue unless Defendant's conduct is
27  enjoined.  Chegg has no adequate remedy at law.
28

21

77.     Chegg is therefore entitled to injunctive relief, compensatory damages, attorneys' fees, costs, and/or other equitable relief.

## COUNT FOUR
## TRADEMARK INFRINGEMENT

78.     Chegg realleges and incorporates by reference, as if fully set forth herein, the allegations in all of the preceding paragraphs.

79.     Chegg owns numerous U.S. federal registrations for the CHEGG mark and variations thereof, including U.S. Registration Nos. 5,058,869; 4,777,915; 4,021,925; 3,970,742; 4,485,490; 3,191,844.  These registrations are in full force and effect and are enforceable.   Registration Nos. 4,021,925, 3,970,742, and 3,191,844 have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, thereby constituting conclusive and independent evidence of Chegg's exclusive right to use those marks in commerce in connection with the products and services identified in those registrations.

80.     Defendant displayed the CHEGG mark on its website, and this use in interstate commerce is likely to cause consumers to confuse or mistake, or to deceive consumers as to, the origin of the services offered by Defendant and as to their affiliation, connection, or association with and/or endorsement or approval by Chegg.

81.     The foregoing acts of Defendant constitute false designation of origin, association, affiliation, connection, endorsement and/or approval under 15 U.S.C. § 1125(a).

82.     Defendant's actions also constitute the use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of a registered trademark of Chegg in connection with the sale, offering for sale, distribution, or advertising of services on or in connection with which such use is likely to cause confusion or mistake, or to deceive, in violation of 15 U.S.C. § 1114.

83.     Upon information and belief, Defendant has engaged in such false designation of origin, association, affiliation, connection, endorsement and/or approval knowingly,

willfully, deliberately, and in conscious disregard of Chegg's rights, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

84.     Chegg has been damaged, and Defendant has been unjustly enriched, by such unlawful conduct in an amount to be proven at trial.

85.     In addition, Defendant's conduct described herein has caused and, if not enjoined, will continue to cause irreparable damage to Chegg's rights in its marks, and to the positive reputation and goodwill of Chegg, which cannot be adequately compensated solely by monetary damages.  Chegg therefore has no adequate remedy at law and seeks permanent injunctive relief pursuant to 15 U.S.C. § 1116.

## JURY DEMAND

86.     Chegg requests a trial by jury on all claims so triable.

## RELIEF REQUESTED

87.     Chegg respectfully requests that judgment be entered in its favor and against Defendant on all counts.

88.     Chegg requests that the Court issue preliminary, interim, and permanent injunctive relief enjoining and restraining Defendant and its agents, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from:

A.     Accessing or attempting to access Chegg's website and protected computer systems for any purposes whatsoever;

B.     Using any accounts, creating any new accounts, or taking over any existing accounts, on Chegg.com, for any purposes whatsoever;

C.     Assisting, instructing, or providing a means for others to access Chegg's website and computer systems in excess of authorization;

D.     Using or reproducing Chegg's proprietary "Chegg Study" materials anywhere or in any way;

23

E.   Using the CHEGG Marks or any other name or mark in a manner which is likely to cause the public to be confused as to the source or sponsorship of Defendant's products, services, or websites; and

F.   Otherwise further diluting or infringing the CHEGG Marks.

89.   Chegg further requests that the Court order the following additional non-monetary relief:

A.   Destruction of all copies of Chegg's proprietary materials unlawfully obtained by Defendant, whether same are in the custody or control of Defendant or its employees, agents, assigns, or the third-party service providers (including, without limitation, web hosts, proxy servers, privacy services and domain registrars);

B.   A detailed accounting of web traffic, web analytics, and revenues obtained directly or indirectly by Defendant and/or its agents as a direct or indirect result of the unlawful copying of Chegg's proprietary content;

C.   Identification of each and every Chegg account and user name ever used or controlled by Defendant, or any of its employees, agents, and assigns, to engage in the complained-of conduct or for any other purposes whatsoever; and

D.   That Defendant certify and confirm, in writing and under oath, within thirty (30) days of the issuance of any order of the Court providing a remedy to Chegg, that Defendant has complied fully and completely with all requirements of such order.

90.   Chegg further requests that the court award to Chegg as permitted by law and in such amounts to be proven at trial:

A.   Monetary damages, including but not limited to compensatory, statutory, and punitive damages;

B.   Defendant's profits;

C.   Punitive or exemplary damages;

D.   Chegg's reasonable costs, including reasonable attorneys' fees; and

E.   Pre- and post-judgment interest.

91.   Chegg further requests such other relief as the Court may deem just and proper.

DATED: MARCH 26, 2021                **FOLEY & LARDNER LLP**

                                     /s/ *Eileen R. Ridley*
                                     EILEEN R. RIDLEY, CA BAR NO.
                                     151735

                                     JAMI A. GEKAS (*Pro Hac Vice pending*)

                                     JOSHUA L. HARRIS (*Pro Hac Vice pending*)

                                     Attorneys for Plaintiff
                                     CHEGG, INC.

4834-2805-2960.2